**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **EAGLE TX I SPE LLC,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | **Civil Action No. 3:13-cv-2565-O** |
| **SHARIF & MUNIR ENTERPRISES, INC. and RAMSEY M. MUNIR,** | § | |
| **Defendants.** | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Brief in Support (ECF No. 10), filed September 3, 2013; Plaintiff's Response (ECF No. 14), filed October 15, 2013; and Defendants' Amended Reply (ECF No. 19), filed November 17, 2013.[1] Having reviewed the motion, the pleadings, and the applicable law, the Court finds that Defendants' Motion to Dismiss (ECF No. 10) should be and is hereby **GRANTED.**

---

[1] Also before the Court are Plaintiff's Objections to Defendants' Reply (ECF No. 18), filed November 15, 2013; Defendants' Amended Reply (ECF No. 19), filed November 17, 2013; Defendants' Motion to File Amended Reply (ECF No. 21), filed November 17, 2013; Plaintiff's Response (ECF No. 23), filed November 18, 2013; and Defendants' Response to Plaintiff's Objections (ECF No. 26), filed December 16, 2013. Plaintiff objects to Defendants' Amended Reply because it (1) presented new evidence that was not provided in direct response to any specific argument raised by Plaintiff and (2) failed to comply with Federal Rule of Civil Procedure 56's provisions regarding affidavits. *See* Pl.'s Objection, ECF No. 18; Pl.'s Resp., ECF No. 23. When presented with new evidence in a reply brief a court may exercise its discretion and not consider the new arguments or evidence. *See Digital Generation, Inc. v. Boring*, 869 F. Supp. 2d 761, 771 (N.D. Tex. 2012) (Lindsay, J.); *see also Weber v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 455 F. Supp. 2d 545, 551 (N.D. Tex. 2006) (Fitzwater, J.). The Court finds that the Affidavit of Defendant Ramsey M. Munir, attached to Defendants' Amended Reply (ECF No. 20), contains new arguments. Therefore, the Court grants Defendants' Motion to File Amended Reply (ECF No. 21), but will exercise its discretion and not consider the affidavit.

## I. BACKGROUND

This diversity action arise outs of four promissory notes (the "Notes") executed and delivered to Colonial Bank by Defendant Sharif & Munir Enterprises, Inc. ("S&M Enterprises") between February 2005 and August 2008. Pursuant to the Notes, Colonial Bank extended four loans to S&M Enterprises and each Note was secured by a deed of trust, security agreement, and assignment of rents for one property located in Frisco, Texas, and three properties located in Dallas, Texas. Defendant Ramsey M. Munir ("Munir") guaranteed all four Notes. Plaintiff Eagle TX I SPE, LLC d/b/a Eagle Lone Star I SPE, LLC ("Plaintiff") alleges it is a North Carolina limited liability company ("LLC") with its principal place of business in Winston-Salem, North Carolina. Compl. ¶ 1, ECF No. 1. Plaintiff alleges that S&M Enterprises is a Texas corporation with its principal place of business in Dallas, Texas, and Munir is a resident of Texas. *Id.* ¶¶ 2-3.

Around 2009, Colonial Bank failed and Branch Banking & Trust Company ("BB&T") acquired certain assets and liabilities of Colonial Bank from the Federal Deposit Insurance Corporation ("FDIC"), which was appointed as Colonial Bank's receiver. *See* Defs.' Mot. 7, ECF No. 10. To effectuate the asset acquisition, BB&T and the FDIC entered into a purchase and assumption agreement ("PAA") and loss-sharing agreements ("LSA"). On June 29, 2011, BB&T assigned all its right, title, and interest in the Notes and other loan documents to Plaintiff. Compl. Ex. 6 (Assignment), App. 59-61, ECF No. 1-1. The sole member of Plaintiff is Eagle SPE, LLC, and the sole member of Eagle SPE, LLC is BB&T. Compl. ¶ 5, ECF No. 1.

Plaintiff alleges that S&M Enterprises became delinquent in the payment of the Notes. Compl. ¶ 25, ECF No. 1. Plaintiff made demand on S&M Enterprises for payment of the overdue indebtedness on the Notes and notified S&M Enterprises of its intent to exercise its legal remedies.

*Id.* ¶ 25. Plaintiff provided S&M Enterprises with notice of a substitute trustee's sale for the Frisco and Dallas properties, and on July 5, 2011, Plaintiff purchased the Frisco and Dallas properties at foreclosure sales. *Id.* ¶¶ 28-47. Plaintiff filed suit against Defendants S&M Enterprises and Munir (collectively "Defendants") seeking to recover deficiency amounts from the sales. *Id.* ¶¶ 48-49.

On September 3, 2013, Defendants filed their Motion to Dismiss (ECF No. 10). Defendants assert that complete diversity does not exist because Plaintiff and/or BB&T and the FDIC, which is considered a "stateless" entity for purposes of diversity jurisdiction, were partners under the PAA and LSA. The motion has been fully briefed and is ripe for determination.

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction and possess "only that power authorized by Constitution and statute, . . . which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Federal courts presume that a cause lies outside their limited jurisdiction, and the party asserting jurisdiction bears the burden of establishing that subject matter jurisdiction exists. *Id.* (citations omitted); *see also Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996) (citations omitted); *Sierra Club v. Energy Future Holdings Corp.*, 921 F. Supp. 2d 674, 678 (W.D. Tex. 2013) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)). Accordingly, a case will be dismissed under Rule 12(b)(1) if a court "'lacks the statutory or constitutional power to adjudicate the case.'" *McKinney v. United States*, 950 F. Supp. 2d 923, 925-26 (N.D. Tex. 2013) (McBryde, J.) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

Where subject matter jurisdiction is challenged, a court is "free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004) (citing *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947)). Rule 12(b)(1) permits a court to consider a "broader range" of materials than the Rule 12(b)(6) standard, *Williams v. Wynne*, 533 F.3d 360, 365 n.2 (5th Cir. 2008), and a defendant may make a "facial attack" or a "factual attack" upon a complaint under Rule 12(b)(1). *Paterson*, 644 F.2d at 523. A facial attack requires a court to determine whether the complaint sufficiently alleges a basis for subject matter jurisdiction while presuming the allegations in the complaint are true. *Id.*; *Rodriguez v. Tex. Comm'n on the Arts*, 992 F. Supp. 876, 878 (N.D. Tex. 1998) (Cummings, J.). A factual attack, however, challenges the facts on which jurisdiction depends and allows a court to consider matters outside of the pleadings, such as affidavits, testimony, or other evidentiary materials. *Paterson*, 644 F.2d at 523; *Sierra Club*, 921 F. Supp. 2d at 678. When a defendant makes a factual attack "no presumptive truthfulness attaches to plaintiff's allegations." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (citation omitted). Under Rule 12(b)(1), a court may consider "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Sierra Club*, 921 F. Supp. 2d at 679 (citing *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997)). If the defendant makes a factual attack on a court's jurisdiction the plaintiff has the burden of proving by a preponderance of the evidence that the court has subject matter jurisdiction. *Paterson*, 644 F.2d at 523; *Jones v. SuperMedia Inc.*, 281 F.R.D. 282, 286 (N.D. Tex. 2012) (Boyle, J.).

## III. ANALYSIS

Here, Defendants argue that the PAA and LSA created a partnership between Plaintiff and/or BB&T and the FDIC, and that the presence of the FDIC in the partnership destroys complete diversity.[2] Defendants offer evidentiary materials outside of the pleadings, including BB&T's Form 8-K, the PAA and LSA, and documents from the FDIC's website, to support their motion.[3] *See* Defs.' App. Supp. Mot., ECF No. 11. Accordingly, the Court construes Defendants' motion as a factual attack on the Court's jurisdiction. *See Paterson v. Weinberger*, 644 F.2d at 523.

Plaintiff asserts that the Court has jurisdiction of this case because there is complete diversity of citizenship between the parties. Compl. ¶ 4, ECF No. 1. Under 28 U.S.C. § 1332, district courts have original jurisdiction of all civil actions where the matter in controversy exceeds $75,000 and

---

[2] Defendants also argue that the relationship between Plaintiff and/or BB&T and the FDIC constitutes a joint venture. The Texas Supreme Court, however, has noted that there is "no legal or logical reason [to] distinguish[] a joint venture from a partnership on the question of formation of the entity." *Ingram v. Deere*, 288 S.W.3d 886, 894 n.2 (Tex. 2009); *see also United States v. 2004 Ferrari 360 Modeno*, 902 F. Supp. 2d 944, 952-53 (S.D. Tex. 2012) ("Texas does not recognize a separate 'joint venture' entity but has instead categorized all such enterprises as partnership.") (citing *Ingram*, 288 S.W.3d at 894 n.2). Accordingly, the Court will only analyze whether the relationship formed pursuant to the PAA and LSA constituted a partnership.

[3] Plaintiff objects to the inclusion of BB&T's Form 8-K and the documents from the FDIC website arguing that they are offered to prove the content of the PAA and LSA and that the documents from the website are hearsay. *See* Pl.'s Resp. 6-7, ECF No. 14. Federal Rule of Evidence 201 allows a court to judicially notice facts that are "generally known within the trial court's territorial jurisdiction" or facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Plaintiff does not question the accuracy of these documents and the Fifth Circuit permits courts to take judicial notice of governmental websites. *See In re Katrina Canal Breaches Consol. Litig.*, 533 F. Supp. 2d 615, 632 (E.D. La. 2008). Furthermore, courts may take judicial notice of publicly available documents and records that are directly relevant to the issues at hand. *Funk v. Stryker Corp.*, 631 F.3d 777, 782-83 (5th Cir. 2011); *see also Glenbrook Cap. Ltd. P'ship v. Kuo*, 525 F. Supp. 2d 1130, 1137 (N.D. Cal. 2007) (taking judicial notice of Form 8-K filed with SEC). Accordingly, Plaintiff's objections to Defendants' evidentiary materials are overruled.

is between citizens of different States.[4] 28 U.S.C. § 1332(a)(1). The Supreme Court has interpreted this statute to require "complete diversity" of citizenship. *Carden v. Arkoma Assocs.*, 494 U.S. 185, 187 (1990) (citing *Strawbridge v. Curtiss*, 3 Cranch 267, 2 L.Ed. 435 (1806)); *see also Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996); *Vantage Drilling Co. v. Hsin-Chi Su*, ___ F.3d ___, 2014 WL 53691, at *2 (5th Cir. 2014). "Complete diversity requires that all persons on one side of the controversy be citizens of different states than all persons on the other side." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008) (citations omitted) (internal quotation marks omitted). The citizenship of unincorporated entities, such as partnerships and LLCs, is determined by the citizenship of each member of the entity. *Id.* at 1079-80 (citing *Carden*, 494 U.S. at 195-96); *see also Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 569 (2004). Accordingly, for a court to have subject matter jurisdiction over a dispute involving a partnership, each partner must meet the requirements of the diversity statute. *See Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 84 n.1 (2005) (citing *Carden*, 494 U.S. at 192-97); *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 829 (1989) (citation omitted); *Harvey*, 542 F.3d at 1079.

The FDIC is a federally-chartered corporation. *See* 12 U.S.C. § 1811(a); *Fed. Deposit Ins. Corp. v. Nat'l Sur. Corp.*, 345 F. Supp. 885, 887 (S.D. Iowa 1972). The citizenship of federally-chartered corporations has "a long and checkered legal history," but courts have generally found that federally-chartered corporations "are national citizens ineligible to invoke federal diversity jurisdiction." *Lehman Bros. Bank, FSB v. Frank T. Yoder Mortg.*, 415 F. Supp. 2d 636, 639-41 (E.D. Va. 2006); *see also Iceland Seafood Corp. v. Nat'l Consumer Co-op. Bank*, 285 F.

---

[4] Neither party argues that this case fails to meet the amount in controversy requirement. Plaintiff alleges that Defendants owe (1) $62,247.45 under the first note, Compl. ¶ 32, (2) $303,869.03 on the second note, *id.* ¶ 37, (3) $123,293.65 on the third note, *id.* ¶ 42, and (4) $959,284.45 on the fourth note, *id.* ¶ 47.

Supp. 2d 719, 26 (E.D. Va. 2003) (listing federally-chartered corporations found to have national citizenship for purposes of diversity jurisdiction); *Little League Baseball, Inc. v. Welsh Pub. Grp., Inc.*, 874 F. Supp. 648, 651 (M.D. Pa. 1995) (same); *Nat'l Sur. Corp.*, 345 F. Supp. at 887 (finding FDIC "has citizenship in no particular state"). Accordingly, the presence of a federally-chartered corporation in a suit destroys complete diversity. *Banks of the Ozarks v. IS Motel Corp.*, No. 4:12-cv-0024-HLM, 2012 WL 1134733, at *2 (N.D. Ga. Apr. 2, 2012) (citation omitted); *see also Newman-Green*, 490 U.S. at 829 (describing "stateless" parties as "jurisdictional spoilers").

The Court is only aware of one other court addressing whether a relationship between a plaintiff and the FDIC to acquire the assets of a failed bank pursuant to a purchase and assumption agreement and shared-loss agreement constitutes a partnership that destroys complete diversity.[5] *See Bank of the Ozarks*, 2012 WL 1134733. Federal courts have found, however, that where the FDIC is a member of an LLC, the LLC is deemed stateless and diversity of jurisdiction does not exist.[6]

---

[5] In *Bank of the Ozarks*, the court examined three provisions in the agreements at issue and determined that the FDIC was not a member of the plaintiff because the FDIC did not retain any ownership interest in the notes and guaranties at issue. *See* 2012 WL 1134733, at *2-3. Georgia law defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit . . . ." O.C.G.A. § 14-8-6(a). Courts in Georgia consider factors such as the sharing of profits and losses and joint control over the business, but the "true test" of whether parties have created a partnership is "the intention of the parties." *Rosenfeld v. Rosenfeld*, 648 Ga. App. 61, 63 (Ga. Ct. App. 2007) (citation omitted). The defendant in *Bank of the Ozarks* made a facial attack through "conclusory allegations" and the court did not analyze any of the factors used to determine whether a partnership existed under Georgia law. *See* 2012 WL 1134733, at *2 ("Plaintiffs['] allegations do not indicate that the FDIC is a member of Plaintiff . . . .").

[6] Similar to the arrangement at issue here, the FDIC has formed LLCs with private entities to manage and collect assets of failed banks. The Eleventh Circuit explained:

> The FDIC, as receiver for failed financial institutions, will often form a limited liability company (LLC), to which assets from the failed institution . . . are conveyed. The FDIC, which at that point holds 100% of the equity in the LLC, solicits bids from private investors for equity interests in the LLC. After a private investor purchases a percentage in the LLC, the FDIC transfers management responsibilities to its private partner to take advantage of the private investor's expertise.

*See, e.g.*, *CML-NV E. Mountain, LLC v. Vandenberg 8 LLC*, No. 2:11-cv-00187-GMN-RJJ, 2012 WL 4339602, at *2 (D. Nev. Sept. 20, 2012); *RES-GA Four LLC v. Avalon Builders of GA LLC*, No. 5:12-cv-463, 2012 WL 13544, at *3 (M.D. Ga. Jan. 4, 2012); *RES-GA Creekside Manor, LLC v. Star Home Builders, Inc.*, No. 2:10-cv-207-RWS, 2011 WL 6019904, at *2-4 (N.D. Ga. Dec. 2, 2011); *RES-NC Settlers Edge, LLC v. Settlers Edge Holding Co., LLC*, No. 1:10cv173, 2011 WL 3897729, at *4-5 (W.D.N.C. Sept. 6, 2011); *Multibank 2009-1 RES-ADC Venture, LLC v. CRM Ventures, LLC*, No. 10-cv-02001-PAB-CBS, 2010 WL 3632359, at *2 (D. Colo. Sept. 10, 2010). The Court finds these cases persuasive because the rules for determining the citizenship of a partnership apply to limited liability corporations. *See Harvey*, 542 F.3d at 1079-80 (citations omitted); *see also Bank of the Ozarks*, 2012 WL 1134733, at *2 (finding plaintiff did not form partnership with FDIC; noting presence of FDIC in LLC destroys complete diversity); *Gladys McCoy Apartments, Ltd. P'ship v. State Farm Fire & Cas. Co.*, No. 09-981-PK, 2010 WL 1838941, at *4-5 (D. Or. Mar. 30, 2010) (finding presence of federally-chartered corporation in partnership destroyed complete diversity).

Plaintiff makes the following allegations regarding the citizenship of the parties in this action:

- *Plaintiff* is a North Carolina LLC with its principal place of business in Winston-Salem, North Carolina;
- The sole member of Plaintiff, *Eagle SPE, LLC*, is a North Carolina LLC with its principal place of business in Winston-Salem, North Carolina;
- *BB&T* is the sole member of Eagle SPE, LLC, and is a North Carolina corporation with its principal place of business in Winston-Salem, North Carolina;
- *Munir* is a Texas resident domiciled in Dallas, Texas; and
- *S&M Enterprises* is a Texas corporation with its principal place of business in Dallas, Texas.

---

*R.S.B. Ventures, Inc. v. F.D.I.C.*, 514 F. App'x 853, 856 (11th Cir. 2013).

Compl. ¶¶ 2, 5-6, ECF No. 1. Accordingly, Plaintiff is a citizen of the State of North Carolina and Defendants are citizens of the State of Texas and complete diversity exists, unless Plaintiff and/or BB&T formed a partnership with the FDIC.[7]

**A. Existence of Partnership**

Under Texas law, a partnership is defined as "an association of two or more persons to carry on a business for profit as owners . . ., regardless of whether . . . the persons intend to create a

---

[7] Plaintiff, relying on an unpublished opinion, argues that even if Plaintiff and/or BB&T and the FDIC are partners, the Court may exercise jurisdiction pursuant to the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"). Pl.'s Resp. 21-24 (citing *CML-NV Civic Ctr., LLC v. Gowan Indus., L.L.C.*, No. 2:11-cv-00120-PMP-PAL, 2011 WL 6752406 (D. Nev. Dec. 23, 2011)). The majority of post-FIRREA cases, however, have found that the presence of the FDIC in a LLC destroys complete diversity. *See, e.g.*, *Vandenberg 8 LLC*, 2012 WL 4339602, at *3-4; *Bank of the Ozarks*, 2012 WL 1134733, at *2; *Settlers Edge Holding Co., LLC*, 2011 WL 3897729, at *2-5; *see also Avalon Builders*, 2012 WL 13544, at *3 n.9 (stating opinion in *Gowan Industries* was not "authoritative").

FIRREA expands federal court jurisdiction over suits where the FDIC is a party. *Carrollton-Farmers Branch Indep. Sch. Distr. v. Johnson & Cravens*, 889 F.2d 571, 572 (5th Cir. 1989) (citing 12 U.S.C. § 1819); *see also Vandenberg 8 LLC*, 2012 WL 4339602, at *3 ("[FIRREA] makes no mention of jurisdiction in cases in which the FDIC is *not* a party . . . ."). "A 'party' to litigation is 'one by or against whom a lawsuit is brought.'" *United States ex rel. Eisenstein v. City of New York, N.Y.*, 556 U.S. 928, 933 (2009) (citation omitted). Here, the FDIC is not a party. *Compare Fed. Sav. & Loan Ins. Corp. v. Griffin*, 935 F.2d 691, 696 (5th Cir. 1991) ("[Defendant] had asserted four counterclaims against FDIC as receiver . . . and sought a money judgment. . . . Since [the FDIC] had a right to defend, it was a proper party."), *with Star Home Builders, Inc.*, 2011 WL 6019904, at *4 n.5 ("The FDIC is not a party in this case, and its membership in Plaintiff's parent LLC does not make it one."), *and Settlers Edge Holding Co., LLC*, 2011 WL 3897729, at *3 ("[T]he FDIC is not a party; it is merely a part owner of the owner of a party.").

The majority of district courts have also noted that FIRREA did not change "the treatment of the FDIC for the purposes of federal diversity jurisdiction." *Vandenberg 8 LLC*, 2012 WL 4339602, at *3-4; *see also Jones v. F.D.I.C.*, No. 5:12-cv-176, 2012 WL 6115374, at *8 n.4 (M.D. Ga. Dec. 10, 2012) (stating diversity jurisdiction "not possible" where FDIC substituted as defendant because "the FDIC is a federally chartered corporation that is not a citizen of any state"); *JP Morgan Chase Bank, N.A. v. First Am. Title Ins. Co.*, No. 09-14891, 2012 WL 262465, at *2 (E.D. Mich. Jan. 30, 2012) (noting "the unambiguous command of [Section] 1819(b)(2)(A)" and "well[-]settled case law" establish stateless entities such as FDIC are barred from proceeding in federal court on diversity grounds); *Settlers Edge Holding Co., LLC*, 2011 WL 3897729, at *2-5 (finding FIRREA does not alter FDIC's status as stateless entity that destroys complete diversity). The Court, therefore, declines to expand its jurisdiction without clearer congressional authority. *See Kokkonen*, 511 U.S. at 377; *Nat'l Sur. Corp.*, 345 F. Supp. at 887.

partnership; or . . . the association is called a 'partnership,' 'joint venture,' or other name."[8] Tex. Bus. Org. Code § 152.051(b). The Texas Business Organizations Code ("TBOC") enumerates five factors that indicate that persons have created a partnership:

> (1) receipt or right to receive a share of profits of the business;
> (2) expression of an intent to be partners in the business;
> (3) participation or right to participate in control of the business;
> (4) agreement to share or sharing:
> (A) losses of the business; or
> (B) liability for claims by third parties against the business; and
> (5) agreement to contribute or contributing money or property to the business.

Tex. Bus. Org. Code § 152.052(a).[9]

The "most important factors" are the sharing of profits and control over the business. *See Ingram v. Deere*, 288 S.W.3d 886, 896 (Tex. 2009); *Big Easy Cajun Corp. v. Dall. Galleria Ltd.*, 293 S.W.3d 345, 348 (Tex. App.—Dallas 2009, pet. denied). Courts, however, must examine the totality of the circumstances to determine whether a partnership exists. *Rojas v. Duarte*, 393 S.W.3d 837, 841 (Tex. App.—El Paso 2012, pet. denied) (citing *Ingram*, 288 S.W.3d at 898). No single factor is determinative and evidence in support of these factors is to be considered on a "continuum":

> On one end of the continuum, a partnership exists as a matter of law when conclusive evidence supports all five statutory factors. . . . On the other end of the continuum, a partnership does not exist as a

[8] The Texas Business Organizations Code defines "person" as "an individual or a corporation, partnership, limited liability company, business trust, trust, association, or other organization, estate, government or governmental subdivision or agency, or other legal entity." Tex. Bus. Org. Code § 1.002(69-b).

[9] On January 1, 2010, the Texas Revised Partnership Act ("TRPA") expired and the TBOC now applies to all partnerships regardless of their formation date. *See Ingram v. Deere*, 288 S.W.3d 886, 894 n.4 (Tex. 2009). Both parties applied the TBOC and the TBOC's rules for determining partnership formation "are substantially the same" as those under the TRPA. *Id.*; *see also Malone v. Patel*, 397 S.W.3d 658, n.4 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

> matter of law when there is no evidence as to any of the five factors, and conclusive evidence of only one factor will normally be insufficient to establish the existence of a partnership. . . . Points on the evidentiary continuum between these two ends are where the challenge lies in applying the totality-of the circumstances test."

*Rojas*, 393 S.W.3d at 841 (citations omitted); *see also Ingram*, 288 S.W.3d at 898 (explaining "difficulty of uniformly applying a totality-of-the-circumstances test"); *Westside Wrecker Serv., Inc. v. Skafi*, 361 S.W.3d 153, 166 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (noting all factors should be considered and no single factor is determinative) (citing *Ingram*, 288 S.W.3d at 896-97).

1. <u>Profit Sharing</u>

The Court first considers whether BB&T and the FDIC shared profits or had a right to receive a share of the profits under the PAA and LSA. While the sharing of profits is not required to form a partnership, this factor, along with the right to control the business, is one of the most important factors. *Ingram*, 288 S.W.3d at 896; *Rojas*, 393 S.W.3d at 841. The Texas Supreme Court has defined "profits" as "the excess of revenues over expenditures in a business transaction." *Ingram*, 288 S.W.3d at 899 (citation omitted). Accordingly, sharing gross revenue or receiving a share of profits as compensation for services or work is not profit sharing. *Id.*; *Malone v. Patel*, 397 S.W.3d 658, 675 (Tex. App.—Houston [1st Dist.] 2012, pet. denied); *Hoss v. Alardin*, 338 S.W.3d 635, 642 (Tex. App.—Dallas 2011, no pet.); *Big Easy Cajun Corp.*, 293 S.W.3d at 348; *see also Schlumberger Tech. Corp. v. Swanson*, 959 S.W.3d 171, 176 (Tex. 1997) (finding "[e]ntitlement to a royalty based on gross receipts is not profit sharing" under Texas Uniform Partnership Act) (citations omitted). Texas courts have also clarified that a party need not actually receive profit—only a right to receive a share of profits. *See Rojas*, 393 S.W.3d at 842.

Here, Defendants assert that BB&T and the FDIC agreed to share in the profits of the alleged

partnership. *See* Defs.' Mot. 14, ECF No. 10. Under the LSA, the FDIC reimburses BB&T for losses incurred and BB&T reimburses the FDIC if BB&T is able to recover the assets. Defs.' App. Supp. Mot. Ex. 4 (Commercial LSA), App. 15, ECF No. 11-4. BB&T's Form 8-K states that "[t]he FDIC will reimburse [BB&T] for 80% of losses up to $5 billion with respect to covered assets. . . . [BB&T] will reimburse the FDIC for 80% of recoveries with respect to losses for which the FDIC paid [BB&T] 80% reimbursement under the [LSA] . . . ." *Id.* Ex. 2 (Form 8-K), App. 2, ECF No. 11-2; *see also Branch Banking & Trust Co. v. Frank*, No. 2:11-cv-1366 JCM (CWH), 2013 WL 5428112, at *10-11 (D. Nev. Sept. 26, 2013) (noting under loss-sharing agreement FDIC "is obligated to compensate plaintiff for a percentage of any portion of the loan that plaintiff is unable to collect . . . [and] plaintiff is obligated to refund the FDIC if it subsequently recovers all or part of the outstanding balance on the loans").

These reimbursements are not profits and there is no evidence that the parties agreed to share profits. *See Ingram*, 288 S.W.3d at 899 (defining profits as "the excess of revenues over expenditures"); *see also Advanced Nano Coatings, Inc. v. Hanafin*, 478 F. App'x 838, 844 (5th Cir. 2012) (finding agreement to share profits where defendant had twenty-five percent interest in partnership); *Rojas*, 393 S.W.3d at 842 (finding agreement to share profits where defendant testified partners agreed to split profit and created "split sheets" listing revenues, expenses, and "[t]otal split amount" allocated to each partner); *Malone*, 397 S.W.3d at 675 (finding agreement to share profits where defendant testified that parties agreed proceeds would be divided "by 'tak[ing] what we make in the company, less all the expenses, overhead, . . . whatever was the balance . . . you just divide by one-third . . . .'"). Furthermore, the Court finds that this factor is not as important under the unique circumstances presented here because the alleged partnership is not intended to be a profit-making

venture; it is an arrangement to allow the FDIC to maximize asset recovery and minimize its losses. *See* Defs.' App. Supp. Mot. Ex. 4 (Loss-Share Questions and Answers), App. 35, ECF No. 11-4; Pl.'s Resp. 15, ECF No. 14. Nevertheless, this factor weighs against a finding of the existence of a partnership.

2. Expression of Intent to be Partners

The Court next addresses the parties' expressions of an intent to be partners. Courts consider the parties' speech, writings, and conduct to analyze their expressions of intent. *Ingram*, 288 S.W.3d at 899. The "expression of intent" factor is "an inquiry separate and apart from the other factors," and therefore, courts should only consider evidence "not specifically probative of the other factors." *Id.* at 899-900. Evidence of expressions of intent include "the parties' statements that they are partners, one party holding the other party out as a partner on the business's letterhead or name plate, or in a signed partnership agreement." *Id.* at 900. There must be evidence, however, that *both* parties expressed an intent to be partners. *Id.*; *Rojas*, 393 S.W.3d at 842; *Westside Wrecker Serv.*, 361 S.W.3d at 168; *see also* Tex. Bus. Org. Code § 152.052(a)(2) ("Factors indicating that persons have created a partnership include *the persons' . . . expression of an intent to be partners* . . . .") (emphasis added). Furthermore, the context in which the statements are made is important in assessing the parties' expressions of intent to be legal partners. *Hoss*, 338 S.W.3d at 644 (citing *Ingram*, 288 S.W.3d at 900).

Defendants contend that BB&T and the FDIC "clearly expressed the intent to be partners" and points to a statement in an FDIC press release titled "FDIC Encourages *Loss-Share Partners* to Provide Forbearance to Unemployed Borrowers." Defs.' Mot. 14, ECF No. 10; Defs.' App. Supp. Mot. Ex. 4 (FDIC Press Release), App. 39, ECF No. 11-4 (emphasis added). When considering the

context of this statement, the Court finds that the FDIC's reference to its "loss-share partners" is not an expression of intent to be legal partners. The press release was a statement to the public regarding the FDIC's program with acquirers of failed FDIC-insured institutions. While the statements may indicate significance to "the business endeavor" between BB&T and the FDIC, there is no evidence that the FDIC was attempting to attach legal significance to the statement. *See Ingram*, 288 S.W.3d at 900; *see also Westside Wrecker Serv.*, 361 S.W.3d at 170-71 (finding party's identification of defendants as partners "not necessarily indicative" of intent to be partner "in the legal sense"); *Hoss*, 338 S.W.3d at 644 (noting "partner" may mean "any sort of close business relationship, and not strictly to mean legal partnerships"). Furthermore, the press release was issued by the FDIC and Defendants do not present any evidence that BB&T expressed an intent to be partners. *See Ingram*, 288 S.W.3d at 900; *see also Rojas*, 393 S.W.3d at 842-43 (finding expression of intent where witnesses testified both parties "introduced themselves as partners"); *Reagan v. Lyberger*, 156 S.W.3d 925, 928 (Tex. App.—Dallas 2005, no pet.) (finding expression of intent where testimony established that both parties referred to each other as partners). Accordingly, this factor suggests that the parties did not form a partnership.

3. Control

Participation, or the right to participate, in the control of the business, like the sharing of profits, has been traditionally viewed as one of the most important factors in determining the existence of a partnership. *Westside Wrecker Serv.*, 361 S.W.3d at 171 (citing *Ingram*, 288 S.W.3d at 896; *Big Easy Cajun*, 293 S.W.3d at 348). "The right to control a business is the right to make executive decisions." *Ingram*, 288 S.W.3d at 901-02 (citations omitted). Facts that may indicate the right to control the business include "exercising authority over the business's operations, the right

to write checks on the business's checking account, control over and access to the business's books, and receiving and managing all of the business's assets and monies." *Sewing v. Bowman*, 371 S.W.3d 321, 334 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd) (citing *Ingram*, 288 S.W.3d at 901-02); *see also Rojas*, 393 S.W.3d at 843 (describing above-mentioned facts as "sub-factors" relevant to concluding party has right to make executive decisions). Texas courts have noted, however, that mere input into the operations of the business does not constitute evidence of a right to control the business. *See Sewing*, 371 S.W.3d at 334-35 (citing *Ingram*, 288 S.W.3d at 903); *Knowles v. Wright*, 288 S.W.3d 136, 147 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Furthermore, performing administrative tasks for the business does not evidence a party's control over the operations of the business. *Big Easy Cajun*, 293 S.W.3d at 349.

Defendants allege that the LSA provides BB&T and the FDIC with "certain rights to control the business." Defs.' Mot. 14, ECF No. 10. Much of the language in the PAA and LSA evidence an intent to sell and transfer outright all of the FDIC's interest in the subject assets. For example, the PAA asserts that BB&T "purchases from the [FDIC], and the [FDIC] hereby sells, assigns, transfers, conveys, and delivers to [BB&T], all right, title, and interest of the [FDIC] in and to all of the assets . . . ." Defs.' App. Supp. Mot. Ex. 2 (PAA), App. 21, ECF No. 11-2. The only other court to consider the question presented here focused its attention on whether the FDIC retained an ownership interest in the assets sold.

In *Bank of the Ozarks v. IS Motel Corp.*, the court discussed three provisions from the purchase agreement and shared-loss agreement that contained identical language to the PAA and LSA at issue here, and found that the parties had not created a partnership because the FDIC did not retain any ownership interest in the loans and guaranties at issue under the agreements. 2012

WL1134733, at *3. Plaintiff contends that *Bank of the Ozarks* "rejected the very same partnership/joint venture argument that Defendants make." Pl.'s Resp. 18, ECF No. 14. Plaintiff asserts that the rules in the LSA concern the administration of the assets and provide the FDIC with some oversight, but do not provide the FDIC with a right to participate in the control of the "core functions of the business." *See id.* at 16. After reviewing the PAA and LSA, the Court finds, however, that the FDIC has a right to participate in the control of the business.

First, the FDIC has a right to control and access BB&T's books and records. "[B]eing sporadically provided information regarding the business does not indicate . . . control of or the right to control the business." *Ingram*, 288 S.W.3d at 902; *see also Malone*, 397 S.W.3d at 677. The right to control and access the business's books, however, does indicate that a party has a right to control. *See Rojas*, 393 S.W.3d at 843; *see also* Tex. Bus. Org. Code § 152.212(c) ("A partnership shall provide access to its books and records to a partner . . . ."); *Ingram*, 288 S.W.3d at 901-02 (finding no control, in part, because defendant was never allowed to see the books and records); *Tierra Sol Joint Venture v. City of El Paso*, 155 S.W.3d 503, 508 (Tex. App.—El Paso 2004, pet. denied) (finding no partnership, in part, because one party controlled the books and did not allow other party access to books).

Pursuant to the PAA, the FDIC transferred records to BB&T, but BB&T is required to "preserve and maintain *for the joint benefit* of the [FDIC] . . . and [BB&T], all Records of which it has custody for such period as . . . the [FDIC] . . . *in its discretion* may require . . . ." Defs.' App. Supp. Mot. Ex. 2 (PAA), App. 36, ECF No. 11-2 (emphasis added). The FDIC is authorized to access all of BB&T's records "to use, inspect, make extracts from or request copies . . . in the manner and to the extent requested . . . ." *Id.* BB&T must also allow representatives of the FDIC

access to "its directors, officers, employees and agents and those of the Acquired Subsidiaries." *Id.* at 40. Furthermore, under the LSA, BB&T must establish and maintain records "in such form and detail as the [FDIC] . . . may require . . . ." *Id.* Ex. 4 (Commercial LSA), App. 25-26, ECF No. 11-4; *see also id.* at 21-22 (requiring BB&T to deliver auditor report; granting FDIC right to perform audit "to determine [BB&T's] compliance"); *id.* at 22 (requiring BB&T to keep books and records "which fairly represent all dealings and transactions"). The FDIC's control over and access to BB&T's books and records rises above the level of mere access to information and evidences the FDIC's right to make executive decisions.

Additionally, the standards required of BB&T under the LSA resemble the standards required of partners. Under the TBOC, a partner owes to the partnership and other partners duties of loyalty and care. Tex. Bus. Org. Code § 152.204(a); *see also id.* § 152.204(b) ("A partner shall discharge the partner's duties to the partnership and the other partners . . . and exercise any rights and powers in the conduct . . . of the partnership business . . . in good faith; and . . . in a manner the partner reasonably believes to be in the best interest of the partnership."). The duty of loyalty requires that a partner refrain from competing with the partnership or dealing with the partnership in an adverse manner. *Id.* § 152.205(3). Here, the LSA requires BB&T to obtain the FDIC's prior written approval for any transaction with or between any affiliate of BB&T with respect to any subject assets. Defs.' App. Supp. Mot. Ex. 4 (Commercial LSA), App. 24, ECF No. 11-4. The LSA also prohibits BB&T from taking any action with respect to related loans to the detriment of subject assets. *Id.* at 26.

The duty of care requires that a partner act "with the care [of] an ordinarily prudent person." Tex. Bus. Org. Code § 152.206(a). The PAA requires BB&T to administer and manage the assets

"in accordance with usual and prudent banking standards and business practices." Defs.' App. Supp. Mot. Ex 2 (PAA), App. 24, ECF No. 11-2. Under the LSA, BB&T must exercise their "best business judgment"and use their "best efforts to maximize collections" with respect to subject assets "without regard to the effect of maximizing collections" on non-subject assets. *Id.* Ex. 4 (Commercial LSA), App. 23-24, ECF No. 11-4. Therefore, the Court finds that the standards of conduct required under the LSA evidence the FDIC's control.

Finally, the PAA and LSA provide the FDIC with the right to exercise authority over BB&T's administration, management, and collection of subject assets. While the FDIC does not conduct the day-to-day affairs of the business, BB&T must collaborate with the FDIC in the management and administration of the business. *See Rojas*, 393 S.W.3d at 843 (finding evidence of control where decisions were made "collaboratively"); *see also R.S.B. Ventures, Inc.*, 514 F. App'x at 856 (noting FDIC "transfers management responsibilities" to private entity in LLC to manage and collect assets of failed banks); *Avalon Builders*, 2012 WL 13544, at *1 (stating private entity in LLC with FDIC "conducts the day-to-day management" of assets). The terms of the LSA provide the FDIC with explicit authority over the operation of the business.[10] Under the LSA, the FDIC need not make a payment to BB&T if the FDIC determines that the charge-off "should not have been effected by [BB&T]."[11] Defs.' App. Supp. Mot. Ex. 4 (Commercial LSA), App. 17, ECF

---

[10] Provisions in the PAA also evidence the FDIC's right to control the business. For example, while the PAA states that the FDIC "sells, assigns, transfers, conveys, and delivers . . . all right, title, and interest" in the subject assets to BB&T, the FDIC may refuse to sell any asset that it deems, "in its discretion," to be essential to the FDIC. *See* Defs.' App. Supp. Mot. Ex. 2 (PAA), App. 21, 25, ECF No. 11-2.

[11] The LSA defines a "charge-off" as "an amount equal to the aggregate amount of loans or portions of loans classified as 'Loss' under the Examination Criteria . . . ." Defs.' App. Supp. Mot. Ex. 4 (LSA), App. 6, ECF No. 11-4.

No.11-4. The FDIC may require BB&T to assign, transfer, and convey any asset back to the FDIC if the FDIC "determines in its discretion that [BB&T] [are] not diligently pursuing collection efforts . . . ."[12] *Id.* at 18-19. The LSA requires BB&T to prioritize its management and collection efforts, stating that BB&T must "use [its] best efforts to maximize collections with respect to [subject assets] . . . without regard to the effect of maximizing collections on [non-subject assets] . . . ." *Id.* at 24. Additionally, BB&T are prohibited from assigning or transferring their rights under the LSA without the FDIC's prior written consent, which can be withheld in the FDIC's "sole discretion." *Id.* at 28; *see also id.* at 26 ("[BB&T] shall not utilize any [special legal power or right] unless the [FDIC] shall have consented in writing . . . ."). Moreover, the LSA provides that BB&T must reimburse the FDIC for any recoveries made on the subject assets. *Id.* at 15-16; *see also Branch Banking & Trust Co. v. Frank*, 2013 WL 5428112, at *6 (noting loss-sharing agreement requires plaintiff to return payments to FDIC if plaintiff is able to collect on loan). Furthermore, the LSA states that BB&T are "responsible to the [FDIC] . . . in the performance of its duties." *Id.* at 23. Under the terms of the LSA, the FDIC has authority to oversee and control how BB&T manages, collects, and recovers the subject assets–what Plaintiff refers to as "the core functions of the business." *See* Pl.'s Resp. 16, ECF No. 14.

---

[12] The court in *Bank of the Ozarks* cited this provision as evidence that the FDIC did not own or control the notes at issue because "if the FDIC had retained an ownership interest in the notes . . . it would have been unnecessary to include such a provision . . . ." 2012 WL 1134733, at *3. Here, however, the Court finds that this provision illustrates the FDIC's right to control the business. While the language of the LSA evidences that BB&T owns the Notes and the FDIC must follow a procedure to regain ownership of the Notes, this "transfer" of ownership and control over the Notes appears to be illusory. If the FDIC determines that BB&T is "not diligently pursuing collection efforts" on the assets, the FDIC may "in its discretion . . . require [BB&T] to assign, transfer and convey" the assets back to the FDIC. *See* Defs.' App. Supp. Mot. Ex. 4 (Commercial LSA), App. at 18-19, ECF No. 11-4. Accordingly, while the FDIC may not have formally retained an "ownership interest" in the Notes, it has the authority to force BB&T to sell back the Notes if the it finds BB&T's collection efforts to be unsatisfactory.

The language of the PAA and LSA illustrate that the FDIC's control over BB&T's administration, management, and collection of the subject assets is more than mere "input" into the operation of the business or control over administrative tasks. *See Sewing*, 371 S.W.3d at 334-35; *Big Easy Cajun*, 293 S.W.3d at 349. Rather, the FDIC has the right to make executive decisions. Accordingly, this factor weighs heavily in favor of a finding that BB&T and the FDIC formed a partnership.

4. Sharing of Losses

The Court next looks at whether BB&T and the FDIC shared or agreed to share the losses of the alleged partnership. An agreement to share losses supports the existence of a partnership, but such an arrangement is not necessary to create a partnership. Tex. Bus. Org. Code § 152.052(c); *Ingram*, 288 S.W.3d at 896, 902. Here, the purpose of the parties' agreements was to share losses associated with the assets of Colonial Bank. *See* Defs.' App. Supp. Mot. Ex. 4 (Commercial LSA), App. 5, ECF No. 11-4; Pl.'s Resp. 15, ECF No. 14. Plaintiff characterizes the relationship as "a contractual arrangement to provide a limit to the potential losses that the assuming bank might sustain in exchange for the risk it assumed in taking on the assets of a failed bank." Pl.'s Resp. 16, ECF No. 14. Under this arrangement, the FDIC typically "will reimburse 80 percent of losses . . . on acquired assets" and BB&T will "absorb[] 20 percent" of the losses. Defs.' App. Supp. Mot. Ex. 4 (Loss-Share Questions and Answers), App. 35, ECF No. 11-4; *see also id.* (Commercial LSA), App. 15. Furthermore, Plaintiff did not challenge the existence of this factor. Accordingly, the Court finds that this factor supports the existence of a partnership between BB&T and the FDIC.

5. Contribution of Money or Property

Finally, the Court finds that the FDIC did not contribute or agree to contribute money or

property to the business. Under the TBOC, "property" includes "tangible and intangible property and an interest in that property." Tex. Bus. Org. Code § 1.002(77). Defendants do not argue that the FDIC agreed to contribute money or property to the alleged partnership, and Defendants have not presented any evidence establishing that the FDIC contributed any property to the business. *See Ingram*, 228 S.W.3d at 903 (stating contribution of time and reputation is "not a contribution to the venture indicative of a partnership interest"); *Westside Wrecker Serv.*, 361 S.W.3d at 172 (noting sharing expenses does not necessarily constitute contributing money or property).

6. Conclusion

After considering the totality of the circumstances, the Court finds that the FDIC is a partner with BB&T. BB&T and the FDIC created a business association in which each party had control over the operation of the association and the parties' coordinated efforts were intended to produce mutual, rather than individual, benefits. *See* Defs.' App. Supp. Mot. Ex. 2 (PAA), App. 39, ECF No. 11-2 ("The parties hereto agree that they will . . . cooperate with each other to carry out the transactions contemplated by the Agreement and to effect the purposes hereof."); *id.* Ex. 4 (Commercial LSA), App. 23, ECF No. 11-4 ("[BB&T] shall be responsible to the [FDIC] . . . in the performance of its duties . . . ."). While only two of the factors evidence the existence of a partnership, the fact that the FDIC has a right to participate in the control of the business and that the parties agreed to share the losses of the business establish that the parties created a partnership.

**B. Plaintiff and the FDIC are Partners**

Finding that the relationship created under the PAA and LSA constituted a partnership, the Court must determine whether Plaintiff is a partner. It is undisputed that BB&T and the FDIC entered into the PAA and LSA, but the parties dispute whether Plaintiff is a partner.

Under the TBOC, "[a] person may become a partner only with the consent of all partners." Tex. Bus. Org. Code § 152.201. Neither party asserts that the FDIC, the sole remaining partner, consented to Plaintiff becoming a partner. Therefore, when BB&T transferred its rights and interests to Plaintiff the partnership ceased to exist. *See* Tex. Bus. Org. Code § 152.051(b) (defining partnership as "an association of *two or more persons* to carry on a business for profit as owners . . . .") (emphasis added).

BB&T became the holder of the Notes in 2009 when it acquired the assets from the FDIC through the PAA and LSA. Compl. ¶¶ 12,16, 20, 24, ECF No. 1. On June 29, 2011, BB&T sold, assigned, and transferred to Plaintiff, its wholly-owned subsidiary, "all of [BB&T's] right, title, interest, claim and demand in, to and arising under" the Notes, all property rights which secure the Notes, and all other loan documents, and Plaintiff assumed and promised to perform "in accordance with the terms thereof each and all of the duties and obligations of [BB&T] . . . ." *See* Compl. Ex. 6 (Assignment), App. 60, ECF No. 1-1. The PAA is binding on all successors and assigns of the FDIC and BB&T, Defs.' App. Supp. Mot. Ex. 2 (PAA), App. 48, ECF No. 11-2, and BB&T may not assign or transfer its rights under the LSA without the FDIC's written consent. *Id.* Ex. 4 (Commercial LSA), App. 27-28, ECF No. 11-4. The provisions of the PAA and the LSA suggest that the FDIC consented to the transfer and Plaintiff, pursuant to the assignment, is now subject to the terms and provisions of the PAA and LSA and is "responsible to the [FDIC] . . . in the performance of its duties . . . ." *Id*. at 23. Accordingly, based on the foregoing analysis concerning the existence of a partnership under the PAA and LSA, the Court finds that a partnership exists between Plaintiff and the FDIC.

## IV. SUBJECT MATTER JURISDICTION

For the reasons discussed above, Defendants have established the existence of a partnership consisting of Plaintiff and the FDIC. Federal courts are courts of limited jurisdiction and only possess that power authorized by Constitution and statute, "which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). The Court must presume this action lies outside its limited jurisdiction, and Plaintiff has the burden of establishing that the Court may properly exercise jurisdiction over this action. *Id.*

To exercise subject matter jurisdiction over this action based on diversity of citizenship, complete diversity must exist between the parties. *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d at 1079 (citation omitted); *see also* Compl. ¶ 4, ECF No. 1 ("This Court has jurisdiction over this suit under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties."). To determine whether complete diversity exists, the Court must look to the citizenship of each partner to determine the partnership's citizenship for purposes of diversity jurisdiction. *Id.* (citing *Carden v. Arkoma Assocs.*, 494 U.S. at 195-96) ("The citizenship of a limited partnership is based upon the citizenship of each of its partners."). Federally-chartered corporations, such as the FDIC, are "national citizens ineligible to invoke federal diversity," *Lehman Bros. Bank, FSB v. Frank T. Yoder Mortg.*, 415 F. Supp. 2d at 640, and the presence of a "stateless" federally-chartered corporation in a suit destroys complete diversity. *See Iceland Seafood Corp. v. Nat'l Consumer Co-op. Bank*, 285 F. Supp. 2d at 726; *Fed. Deposit Ins. Corp. v. Nat'l Sur. Corp.*, 345 F. Supp. at 887. Here, Plaintiff and the FDIC created a partnership and, therefore, complete diversity is destroyed by the presence of the FDIC. As Judge Marc T. Treadwell of the Northern District of Georgia noted: "The FDIC, by turning to the private sector to collect the troubled assets it has acquired, may have created for itself the worst of all possible worlds. Because it is a stateless entity,

its membership in a limited liability company [or partnership] destroys diversity. Because it is not, in the strict sense, a party to the collection actions filed by its [LLC-style] plaintiffs, there is no federal question jurisdiction." *Avalon Builders of GA LLC*, 2012 WL 13544, at *4.

## V. CONCLUSION

Accordingly, the Court finds that Defendants' Motion to Dismiss (ECF No. 10) should be and is hereby **GRANTED.** It is **ORDERED** that Plaintiff's claims against Defendants Sharif & Munir Enterprises, Inc. and Ramsey M. Munir are **DISMISSED without prejudice** for lack of subject matter jurisdiction.

**SO ORDERED** on this **24th day** of **February, 2014**.

Reed O'Connor
UNITED STATES DISTRICT JUDGE